Estate of Charles D. Harlow, Deceased, Grace B. Harlow, Administratrix and Grace B. Harlow, Surviving Wife v. Commissioner.
Estate of Harlow v. Commissioner
Docket No. 64213.
United States Tax Court
T.C. Memo 1959-28; 1959 Tax Ct. Memo LEXIS 219; 18 T.C.M. (CCH) 134; T.C.M. (RIA) 59028; February 12, 1959
Warren A. Doolittle, Esq., 657 Coleman Building, Seattle, Wash., for the petitioner. George E. Constable, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable year 1953 in the amount of $2,513.42. The issue for decision is whether the amount of $6,462.47 was a business bad debt deductible under section 23(k) of the 1939 Code, or as a loss incurred in trade or business, not compensated for by insurance or otherwise, and deductible under section 23(e)(1) of the 1939 Code. Findings of Fact Some of the facts have been stipulated and are hereby found as stipulated. The petitioner, *220 Grace B. Harlow, is the surviving spouse of Charles D. Harlow, deceased, the duly appointed administratrix of his estate, and resides in Seattle, Washington. Petitioner and Charles D. Harlow, deceased (hereinafter referred to as Harlow), filed a joint income tax return for the taxable year 1953 with the district director of internal revenue, Tacoma, Washington, in which they claimed a business bad debt deduction in the amount of $6,462.47. Harlow was a licensed dentist. At the time of his death and for several years prior thereto, he operated the Harlow Dental Clinic located at 1909 Westlake Avenue, Seattle, Washington. The dental clinic was acquired by Harlow on a conditional sales contract from A. E. Boren and W. W. Shephard on February 5, 1947. As part of the arrangement, Harlow agreed to and did employ Boren as office manager at a salary of $500 per month. Harlow also had an understanding with Boren that each would receive bonuses at the end of each month commensurate with the business of the clinic. In 1948, the State of Washington brought suit against Boren, Shephard, and Harlow for violation of the dental laws in King County, Washington. The trial court granted judgment *221 for the defendants, but the Supreme Court of Washington reversed the judgment in , and held that the payments to Boren were in fact a division of profits and constituted a violation of the Washington state dental law. There followed argument in the Superior Court and another appeal to the Supreme Court over the form of injunction appropriate in the case. The remittitur was filed in the Superior Court on December 29, 1950, and judgment on remittitur was entered February 15, 1951, which enjoined Boren and Shephard from practicing dentistry without a license and which enjoined Harlow from aiding and abetting them in the illegal practice of dentistry. During the pendency of the appeal on the injunction to the Supreme Court, Harlow and Boren, without advice or knowledge of counsel, entered into a copartnership agreement on January 2, 1951. Following the entry of the injunction, Boren, Shephard, and Harlow, together with their counsel Jeffrey Heiman, consulted Alfred J. Schweppe of the law firm, McMicken, Rupp & Schweppe, for advice as to how they might arrange for Harlow to pay the unpaid balance under the conditional *222 sales contract of February 5, 1947, without violating the injunction. Schweppe advised Boren and Shephard to accept Harlow's promissory notes in full payment of the unpaid balance on the conditional sales contract, issue to Harlow a bill of sale to the dental clinic, and secure their notes by a chattel mortgage on the assets of the clinic. In this manner, Boren and Shephard would become creditors of the dental clinic instead of owner-vendors. Heiman prepared and Boren and Shephard delivered to Harlow a bill of sale. Simultaneously, Heiman prepared and Harlow executed two installment notes, one in favor of Shephard in the amount of $12,954.92, and the other in favor of Boren in the amount of $14,079.92, which was later corrected to $12,954.92. These notes were delivered to Boren and Shephard. The two installment notes were secured by a chattel mortgage on all dental equipment, furniture, fixtures, and supplies located at the dental clinic, executed by Harlow and delivered to Boren and Shephard on April 15, 1951. Boren and Shephard recorded the chattel mortgage on April 19, 1951. The conditional sales contract was satisfied of record on the same day. The Shephard note was thereafter *223 paid as the installments came due and was paid off in full prior to the trial of this case. The Boren note was in default for the first year, but was later paid in full. Subsequent to the injunction, Boren opened a dental laboratory under the name of the Westlake Dental Laboratory. Boren continued to visit the Harlow Dental Clinic daily, and as part of the agreement with Harlow, did the laboratory work for the Harlow Dental Clinic. He also continued to issue instructions to the bookkeeper of the Harlow Dental Clinic, since he had been the business manager for the Harlow Dental Clinic and had hired the bookkeeper. From time to time throughout the remainder of 1951, Boren caused the bookkeeper to draw various checks on the dental clinic's bank account for his own benefit. These checks included the following: Checks issued directly to Boren
$ 4,500.00
Checks issued to the collector of
internal revenue in payment of
Boren's income taxes
2,527.09
Checks issued to Westlake La-
boratory representing cash ad-
vances
1,300.00
Checks issued in payment of loan
obligation of Westlake Labo-
ratory
1,250.04
Checks issued in payment of
building repairs and expense
of Westlake Laboratory
670.52
Checks issued to sundry supplies
in payment of supplies and
Equipment purchased by West-
lake Laboratory
2,959.02
Boren's N.F.S. check
50.00
Checks in payment of advertising
for Westlake Laboratory
176.00
Check in payment of rent for
Westlake Laboratory
100.00
$13,532.67
*224 In the fall of 1951, Boren's presence at the dental clinic became so obvious that the prosecuting attorney of King County, Washington, initiated contempt proceedings against Boren, Shephard, and Harlow, charging that they were violating the injunction entered February 15, 1951. Accordingly, a show cause order was entered in King County Cause No. 400083 on November 26, 1951, directing Boren, Shephard and Harlow to appear and show cause why they should not be held in contempt of court. In response to the order the defendants, Boren and Harlow, filed affidavits prepared for them by Jeffrey Heiman who still was acting as attorney for the two of them. In mid-December 1951, Grace B. Harlow brought Harlow to the office of the law firm of McMicken, Rupp & Schweppe, and requested legal representation for Harlow separate from Boren's counsel. She also stated at that time that it was her belief that Boren had been taking money improperly from the dental office. On December 27, 1951, Jeffrey Heiman terminated his services as counsel for Harlow and agreed to deliver his files and documents pertaining to Harlow's business to McMicken, Rupp & Schweppe upon payment of his fee. His fee was paid *225 and the documents were accordingly delivered as promised. From and after December 27, 1951, Boren was finally and completely separated from the Harlow Dental Clinic and the bookkeeper was replaced by Roy Jones, a certified public accountant recommended by H. W. Verhoef of the firm of Pearson & Verhoef of Seattle, Washington. Harlow was hospitalized in the State of Oregon for treatment of an alcoholic condition and Roy Jones proceeded to make a complete analysis of the books of the dental clinic. The analysis disclosed the numerous checks which had been issued in 1951 for the personal account and use of Boren, totaling $13,532.67. The charges were then transferred from expense accounts of the clinic for the year 1951 to an account receivable from Boren. At the time Harlow first went to the firm of McMicken, Rupp & Schweppe, it was first learned by individuals other than Boren or Harlow that the two had entered into a partnership agreement on January 2, 1951. Harlow produced the copartnership agreement in response to counsel's request for a copy of the bill of sale. Thereafter Harlow made all records of the clinic available to the King County prosecutor upon the advice of counsel and *226 offered to testify on behalf of the state in the then pending contempt proceeding. On November 30, 1951, Boren filed an affidavit with the Superior Court of the State of Washington for King County as defendant in the show cause hearing for violation of the injunction in which he stated that his only interest in the Harlow Dental Clinic was evidenced by the chattel mortgage and the promissory note signed by Harlow and due under the contract of sale of April 1951. Boren testified at the trial of the show cause hearing to the effect that he had an interest in the accounts receivable of the dental clinic, above the chattel mortgage and note, representing his interest as a partner with Harlow prior to the issuance of the injunction. The court in rendering its decision on the show cause order on January 9, 1953, declined to make any finding with respect to that testimony. The order was dismissed and the defendant, Harlow, was found not to be operating the clinic illegally or aiding the illegal practice of dentistry. On November 26, 1952, while the contempt proceeding was in progress, Harlow brought suit against Boren for an accounting, attached the note, and made no further payments *227 on the note. Harlow alleged, in a second amended complaint, that Boren had withdrawn some $11,758.73 from the dental clinic and had not repaid this sum, that he, Harlow, was indebted to Boren in the sum of $7,141.05 still outstanding on the note secured by the chattel mortgage for the sale of the dental clinic, and also in the sum of $2,929.15 for services rendered. On May 5, 1953, Boren served an amended answer and cross-complaint on Harlow in which it was alleged that Harlow was indebted to Boren in the sum of $19,375.53 as his share of the assets of the partnership existing with respect to the dental clinic and dental laboratory. It was also acknowledged that plaintiff Harlow was indebted in the sum of $7,141.05 on the note secured by the chattel mortgage. Harlow became ill and required hospitalization in Oregon State. Sometime thereafter he contacted his attorney and requested that a settlement be made with respect to the suit instituted against Boren. The case had been docketed for a June 1953 calendar but due to a confused calendar it was redocketed for September of that year. Prior to the new calendar call a settlement was reached by the parties whereby Harlow was to pay to *228 Boren $3,000 and Boren was to make a final release of his one-half of the chattel mortgage and any further claims he might have against Harlow. The case was dismissed. In their 1953 income tax return, Harlow and his wife, Grace Harlow, claimed a bad debt deduction in the amount of $6,462.47 as a result of the settlement of the suit brought against Boren. This amount was explained on the return as follows: Checks for Boren's benefit
$13,532.67
Balance due Boren on
purchase note
$7,141.05
Amount due Westlake
Dental Laboratory for
laboratory fees
2,929.15
10,070.20
Net balance of Harlow's claim
$ 3,462.47
Compromise settlement payment
to Boren
3,000.00
Total loss claimed on Harlow's
1953 return
$ 6,462.47 Respondent disallowed the deduction, and determined the deficiency, which is here for consideration. Prior to the hearing of this case, Harlow died and was survived by his wife, petitioner herein. Opinion It is petitioner's position that the amount of $6,462.47 was a loss sustained in the trade or business or a bad debt in the taxable year. Respondent, on the other hand, argues that the amount represents a capital investment as part of *229 the cost of acquiring the title to the dental clinic. Petitioner's primary argument is that the cross action filed by Boren against the complaint filed by Harlow for the recovery of the $13,532.67 unauthorized withdrawals from the clinic was a false claim. Harlow had purchased the clinic from Boren and Shephard, originally on a conditional sales arrangement, but finally when the notes were executed in payment of the clinic and the inventory existing at the date of the state injunction. As to the notes, Harlow had become obligated to pay Boren and Shephard $12,954.92 each for their interests. In addition to the notes, Boren claimed a right to a share in the accounts receivable which were uncollected as of the date of the injunction. Boren expressly asserted the right to $19,375.53 as his share. If this were a bona fide claim, any monies paid by Harlow to Boren, as payment of that claim, would admittedly be payment for Boren's interest in the clinic in addition to his share in the assets. Petitioner relies on the affidavit filed by Boren with the Superior Court as defendant in the show cause hearings and attempts to place the affidavit in the light of an assertion, under oath, that *230 he, Boren, had no interest in the clinic other than that represented by the chattel mortgage and note. This, of course, is in direct conflict with Boren's claim that he had an additional right to a share in the accounts receivable. Petitioner argues that, since the cross claim was not bona fide, Harlow's claim was for a bona fide indebtedness owing from Boren for the unauthorized withdrawals and when this claim was compromised the loss realized in the compromise was deductible under the reasoning of ; and . , involved a loss realized as a result of a composition of creditors which loss was held deductible in the same manner as a loss realized from a compromise, citing ; and . , likewise represented the situation where a creditor failed to recover claims from an insolvent debtor. Neither of those situations applies to the facts before us here. If Boren's claim were bona fide, that is, if he *231 had a right to $19,375.53 as payment for his share of the accounts receivable uncollected as of the injunction, then it was Boren who suffered the loss in the settlement, in that he gave up a greater claim for a lesser amount, and petitioner's payments were capital investments in the clinic, his cost of acquisition. Harlow admitted the existence of the partnership which was the basis of Boren's claim. Moreover, Boren had testified at the show cause hearing that he understood that he had a right to a share in the uncollected accounts receivable. What the evidence here amounts to is one sworn statement which contradicts another sworn statement. Petitioner requests us to find as a fact that the affidavit, which favors his position here, is the truth. Neither Boren nor Harlow testified at the hearing of this case. We have had no opportunity to hear either of them and to judge their credibility. Harlow is now deceased. Boren was not available. The Superior Court for the State of Washington conducting the show cause hearing had the opportunity to judge both of them. It expressly refrained from making any findings as to what the arrangement was between Harlow and Boren. We are unable here, *232 on the facts before us, to make a finding that Boren's claim was either bona fide or non-bona fide. Under the circumstances, petitioner has failed to introduce evidence sufficient to overcome the presumption of correctness of the respondent's determination. Decision will be entered for the respondent.